

777 Westchester Ave, Suite 101
White Plains, New York 10604
(O) (914) 218-6190
(F) (914) 206-4176
www.ElHaglaw.com
Jordan@Elhaglaw.com

*The Firm that Fights for Workers' Rights!*

May 5, 2021

**Via ECF**

Hon. Cathy Siebel
United States District Court Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

**Re: Request for FLSA Settlement Approval**
**CASE NAME:** Hernandez v. Zino, et. al.
**Case No.** 7:20-cv-10284-CS

Dear Judge Siebel,

My office represents the Plaintiff in the above referenced matter. The Defendants and Plaintiff are resubmitting this Agreement for your approval under the FLSA. The Parties previously submitted an agreement, which you rejected because of the attorney fees. Since the rejection, the Parties have modified the agreement, but with no change in the amount of attorney fees. Instead, the Parties have bifurcated the settlement agreements into an FLSA and NYLL settlement agreement, and have allocated the attorney fees between the two agreements. If the Court finds that the agreement is fair and reasonable, I ask that the Court "So Order" the Stipulation and Order of Dismissal of FLSA and New York Labor Law Claims With Prejudice.

**Attorney Fees**

If the Court determines that the attorney fees are not reasonable, [1] the Parties ask that the Court determine the amount of attorney fees that the Court finds reasonable and approve the settlement. Plaintiff's counsel will take the difference between the fees in the agreements and amount approved by the Court and place the money in the firm attorney escrow account and appeal the denial of the settlement to the Second Circuit. If the Second Circuit upholds the denial, then the firm will release the escrowed funds to Plaintiff. If the Second Circuit finds the fees reasonable, then El-Hag & Associates, will take possession of the escrowed funds. We are requesting this

[1] Although the settlement agreement does not provide for an attorney fee award, but a contingency fee payment, I refer to the payment as attorney fees for ease of drafting only.

approval in this fashion because the Defendants continue to accrue legal fees in resolving this fee issue and the Plaintiff is eager to resolve the matter and collect whatever portion of the settlement that he can at this moment.

The attorney fees structured in this way is not in violation of *Cheeks*. As explained previously, *Cheeks* is applicable to the FLSA and not the NYLL. There are no attorney fees being allocated in either agreement, it is the contingency fee that is the Plaintiff's contractual obligation to pay. Furthermore, it is well settled in the SDNY that attorney fees of 1/3, which the agreements provide for, is inherently reasonable. Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery. *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).

Since the last conference, I have expended considerably more time to this case. Accordingly, the lodestar has increased. Currently, the lodestar is $9,350.10 (25.39 hours x $350 per hours). Given a multiplier of 2.5, the lodestar with a reasonable multiplier would exceed the amount of attorney fees being paid under both agreements. I have attached a copy of my billing records for your review.

My work hours also do not reflect the time I will expend after the settlement is approved. Which includes securing checks, preparing the paperwork to deliver to Plaintiff, distributing the checks, and conducting a final "closing meeting" with the client. This is approximately 2-3 hours of additional time, or $700-$1,050 in billable time.

**Bifurcation**

The parties have entered into a bifurcated settlement in this matter. The purpose of bifurcation is to clearly delineate the apportioned settlements between the FLSA and NYLL. Indeed, courts routinely permit bifurcated settlements when parties settle FLSA claims along with non-FLSA claims. See, e.g., Surdu v. Madison Global, LLC, 2017 U.S. Dist. LEXIS 142175 (S.D.N.Y. Sept. 1, 2017); Ortiz v. Breadroll, LLC, 2017 U.S. Dist. LEXIS 73657, 2017 WL 2079787 (S.D.N.Y. May 15, 2017); Yunda v. SAFI-G, Inc., 2017 U.S. Dist. LEXIS 65088 (S.D.N.Y. Apr. 28, 2017); Abrar v. 7-Eleven, Inc., 2016 U.S. Dist. LEXIS 50416 (E.D.N.Y. Apr. 14, 2016). Ortiz v. Breadroll, *LLC,* 16-CV-7998 (JLC), 2017 U.S. Dist. LEXIS 73657, 2017 WL 2079787 at * 2 (S.D.N.Y. May 15, 2017). The following are cases that I have submitted and were approved in my past cases:

1. 18-cv-4540- Judge Pittman _ Fernandez v. Masterypro;
2. 19-cv-7860- Judge Netburn_ Lorenzo v. Bridges (approving bifurcation in same agreement);
3. 18-cv-8090- Judge Roman- Angarita v. Flanningan;

4. 18-cv-8602- Judge Bricetti- Pasternak v. Luxor (approving bifurcation in same agreement);
5. 18-cv-04287- Judge Komitee- Scuorzo v. Bridge the gap. (approving bifurcation in same agreement).

**Cheeks Analysis**

The terms of the Agreement – attached hereto as Exhibit "A" – provide that in exchange for a release from Plaintiff of any and all claims under the FLSA and related NY Labor Law claims set forth in the Complaint, Plaintiff will receive a total gross sum of Sixty Thousand Dollars ($60,000.00) (the "Settlement Amount"). This Settlement is a bifurcated agreement. The total FLSA settlement is $20,000 and the remainder of the settlement, $40,000, is allocated under the New York Law. The Plaintiff worked for the Defendants for over 6 years, accordingly, the statute of limitations under the FLSA is two years (1/3) of the total damage period, and the remainder of the statutory period is under the New York Labor Law.

The Agreement, which complies with *Cheeks v. Freeport Pancake House, Inc.,* No. 14-cv-299 (2d Cir. 2015) ("Cheeks"), reflects a compromise between the Plaintiff and Defendants. The Settlement Amount is being allocated as follows: (1) $39,600.00 for alleged unpaid wages and liquidated damages payable to Plaintiff and (2) $20,400.00 to El-Hag & Associates, P.C as for the Plaintiff's payment to his attorney under the retainer agreement, which is one-third of the total settlement plus the $400 filing fee.

The reasons this Agreement complies with Cheeks is as follows:

1. **Class/ Collective Status**. This settlement is not a class/collective settlement. It is limited to the named Plaintiff. Therefore, there is no class representative premium computed in this action.

2. **Computation of Plaintiff's FLSA Recovery.** Plaintiff's maximum unpaid overtime damage computation is $84,371.71. This reflects actual damages, liquidated damages under the FLSA & NYLL, and prejudgment interest under the NYLL. I have attached a computation with this letter. The actual unpaid wages over a the two year FLSA statutory period is $29,748.57. The remainder of claims under the NYLL is $54,623.14.

3. **Risks of litigation.** Because of the uncertain economic impact of the pandemic, Plaintiff would like to take the "bird in the hand." The settlement represents 67% of the potential FLSA recovery. Given the inherent risks of litigation, the settlement represents a very good outcome for the Plaintiff.


4. **Attorney fees are fair and reasonable.** [2] Plaintiff is not receiving any payment of statutory attorney fees under this agreement. There is a distinction between a statutory award of attorney fees to a prevailing party and the fees a client owes under a retainer agreement. Plaintiff agreed to a 1/3 contingency and the recovery of outlaid costs pursuant to his retainer agreement with counsel. The Supreme Court of the United States acknowledged the distinction between statutory attorney fees and contingency fee contract payments. "We have therefore accepted, at least implicitly, that statutory awards of fees can coexist with private fee arrangements." *Venegas v. Mitchell*, 495 U.S. 82, 88 (1990) (Holding that a client had to pay a contractual contingency fee greater than the attorney fee award even though the attorney also secured an attorney fee award). "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the reasonable attorney's fee that a defendant must pay pursuant to a court order." *Id.*, at 90.

   A client's obligation to pay its attorney under a contingency fee contract is different than securing an award of attorney fees. First, attorney fees are not necessarily recoverable. A plaintiff can waive receiving attorney fees in order to settle a case, and it is within the client's control whether to collect the fees or not. "Unless and until the party exercises this power [to collect attorney fees], however, the attorney has no right to collect fees from the non-prevailing party, and the non-prevailing party has no duty to pay them. *Id.* A prevailing party may waive her statutory eligibility for attorney's fees as a condition of settlement. *Pony v. Cty. of Los Angeles*, 433 F.3d 1138, 1142 (9th Cir. 2006). Second, there is a procedure by which a party must follow to secure attorney fees, unlike payment under a contingency contract. Under the FLSA, attorney fee awards are secured by making an application upon the determination that a plaintiff is a prevailing party. 29 U.S.C §216(b). To secure an award for attorney fees a lawyer must file the fee application in accordance with Fed. R. Civ. P. 54. *Radtke v Caschetta*, 422 US App DC 254, 256, 822 F3d 571, 573 [2016]. Where a lawyer wins at trial and the client is subject to a contingency fee arrangement, the attorney would receive one-third of the trial award, regardless of whether the plaintiff made an application for attorney fees afterwards.

   The U.S. Court of Appeals for the Second Circuit recognized that a contingency fee is not an attorney fee award, but it is a contract to pay an attorney as agreed upon by the client and attorney. "A contingent fee retainer contract is the freely negotiated expression both of a client's willingness to pay more than a particular hourly rate to secure effective representation, and of an attorney's willingness to take the case despite the risk of nonpayment. Courts should seek to enforce the parties' intentions in a contingent fee agreement, as with any contract and be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties." *Alderman v. Pan Am World Airways*, 169

[2] Although the Defendants do not oppose this motion, they make no representations concerning, and offer no opinion as to, the attorney fees.

F.3d 99, 103-4 (2d Cir. 1999). And, although "Courts have broad authority to refuse to enforce contingent fee arrangements that award fees that exceed a reasonable amount… [ ] a court should seek to enforce the parties' intentions in a contingent fee agreement, as with any contract." *Id, at* 102-103 [2d Cir 1999].

When structuring FLSA settlements, generally, Plaintiff's lawyers direct the defendant to pay the one-third contingency and costs of the retainer directly to the firm instead of having the money paid to the client and then have the client pay his lawyer directly, as was the case here. The amount of the funds being paid to plaintiff's counsel is not because plaintiff was deemed a prevailing party, it was paid because that was the contractual arrangement between Plaintiff and the Client.

Under the FLSA agreement, Plaintiff's counsel is receiving $7,066.67 in legal fees and costs pursuant to the retainer agreement. Less the costs, this settlement division is approximately equivalent to the standard 1/3 of the recovery.

Despite the position that the agreements do not provide for attorney fees, I have attached a copy of my billing records with this letter. I use a law practice management software called Clio. With this program I can create contemporaneous billing records that are logged into the program. I can then autogenerate a detailed bill of the hours and expenses I have expended on any one of my cases. This is the program I used to generate my time records here. The lodestar is $4,936.60 computed at an hourly rate of $350 per hour for a total of 12.78 hours. This rate has been an approved rate in dozens of FLSA cases. [3] The recovery payment to my firm also includes expenses totaling $400, which is the $400 filing fee to start the action.

The $350 hourly rate is appropriate. I have approximately 19 years of experience in industrial labor relations representing union members in various tribunals and litigating a broad array of labor and employment violations. I serve as chief-trustee on three Taft-Hartley multi-employer welfare and pension funds, has been admitted to practice law for the past 9 years dealing almost exclusively in representing plaintiffs in claims arising under the FLSA, Title VII, the Family Medical Leave Act and the related New York State Labor Laws.

My normal hourly rate is $350. This is the hourly rate that I charge clients who pay me hourly. My $350 hourly rate been repeatedly approved by the federal judiciary. *See, e.g.,* 7:17-cv-03288-CS-JCM, 7:17-cv-05638-CS 7:17-cv-06093-LMS, 7:17-cv-01870-NSR, 7:16-cv-09370-VB. This rate is commensurate in the market with employment litigation attorneys in this area. See *Gamero v. Koodo Sushi Corp.,* 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018)( Holding law firm partner entitled to

[3] See sampling: 1:14-cv-00183-HBP, 1:14-cv-01018-GBD-RWL, 1:17-cv-09063-JMF, 7:15-cv-02177-CS, 7:15-cv-02305-CS, 7:15-cv-08887-KMK, 7:16-cv-09153-KMK, 1:17-cv-06217-FB-SMG, 2:15-cv-00182-AYS, 2:15-cv-03980-JMA-ARL, 53226/2017

$400 hourly rate and associate $300 per hour); *Pineda v. Frisolino, Inc.*, No. 15CIV3774GBDBCM, 2018 WL 3628898, at *2 (S.D.N.Y. July 30, 2018)( Holding law firm partner entitled to $450 hourly rate and associate $350 hourly rate). I have substantially more experience than a law firm associate, but less experience than a twenty-year litigation partner. Accordingly, the appropriate hourly rate is $350 because it falls between $300 and $400 per hour.

Not only do I have extensive experience representing individual employees like the Plaintiff, I also litigate class and multi-plaintiff claims for unpaid wages under the Fair Labor Standards Act and the New York Labor Law; see: 1:14-cv-00183-HBP, 1:14-cv-01018-GBD-RWL, 1:17-cv-09063-JMF, 7:15-cv-02177-CS, 7:15-cv-02305-CS, 7:15-cv-08887-KMK, 7:16-cv-09153-KMK, 1:17-cv-06217-FB-SMG, 2:15-cv-00182-AYS, 2:15-cv-03980-JMA-ARL, 53226/2017 (NYS Supreme Court White Plains). I have also successfully litigated unpaid wage claims to verdict. *Pearson v. Fort Schuyler House, Inc.* 50386/2017 Westchester Supreme Court. See *Bondi et. al. v. Defalco, et. al.* 7:17-cv-05681-KMK-LMS (approved as class counsel in class action settlement).

Furthermore, I assumed the risk of this lawsuit because I took this case on a contingency. Plaintiff is not paying an hourly rate. Multiplying the hourly rate formula has been held to be a reasonable method to compute fairness because it accounts for the risk incurred by my firm to bring Plaintiff's claims to a conclusion. At minimum, multiplying the lodestar by 2 is the bare minimum to account for contingency risk. For instance, in *Fujiwara v. Sushi Yasuda Ltd.,* 58 F.Supp.3d 424, 439 (S.D.N.Y. 2014), the court held that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately." *See, also,* Sanchez *v. JMP Ventures, LLC,* 2015 WL 539506 at *6 (S.D.N.Y. 2015)("persuasive case law suggests that a multiplier as high as 2.0 is appropriate to compensate 'for the risk associated with contingent fees in FLSA cases'").

However, a multiplier of 2 is at the low end of the spectrum. Courts consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky Sec. Litig.,* 888 F. Supp. 551, 562 (S.D.N.Y. 1995); see also *Goldberger,* 209 F.3d at 47; *Savoie v. Merchants Bank,* 166 F.3d 456,460 (2nd Cir. 1999). Courts regularly award lodestar multipliers of up to eight (8) times lodestar, and in some cases, even higher multipliers. See, e.g., *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S Dist. LEXIS 22663, at **78- 79 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley,* 186 F. Supp. 2d at 371

(S.D.N.Y. 2002) (the "modest multiplier of 4.65 is fair and reasonable"); *Davis v. JP. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (5.3 multiplier "toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases.")

Because the Plaintiff is not receiving attorney fees under this agreement, but is paying fees pursuant to the retainer agreement entered into by the client there is no need for the Court to approve the portion of the fees allocated to Plaintiff's counsel. However, even if the Court were to review the award, the fees are still appropriate under the circumstances. Plaintiff's lodestar is nearly equivalent to the payments being received under the FLSA agreement.

5. **FLSA Release is narrowly tailored.** Pursuant to Cheeks, the release of claims under the FLSA in consideration for the monetary compensation Plaintiff is receiving is narrowly tailored to only release the wage related claims in the Complaint.

6. **Negotiation at arm's length.** This settlement was reached at arm's length. The Parties attempted settlement through the Court, which failed. The negotiations were extensive and lasted for months. Additionally, I have never dealt with the Defendants or opposing counsel prior to this transaction.

For the foregoing reasons, Plaintiff and Defendants believe that the Settlement Amount represents a fair and equitable compromise that allows them to proceed with their personal and work lives without the disruptions, inconveniences, and risks inherent in litigation. In light of the above, Plaintiff and Defendants respectfully request that this Court approve the Parties' Agreement.

We sincerely thank the Court for its time and consideration in this matter.

Respectfully submitted,

Jordan El-Hag

Jordan El-Hag, Esq.
Counsel for Plaintiff