# NEW YORK LABOR LAW SETTLEMENT AGREEMENT, GENERAL RELEASE, AND WAIVER

This New York Labor Law Settlement Agreement, General Release, and Waiver between Mauro Hernandez ("Employee"), on Employee's behalf and on behalf of Employee's heirs, executors, administrators, successors, and assigns, in their respective capacities as such (together, "Releasor"), and Zino Nurseries and Landscaping, Inc. ("Employer") and Robert Covino (Employer and Robert Covino, together, the "Zino Parties"), is entered into between the foregoing parties with the following understandings:

**WHEREAS**, Employee was employed by Employer;

**WHEREAS**, Employee's employment with Employer ended, in or around April 2019 (the "Separation Date");

**WHEREAS**, on or about December 8, 2020, Employee commenced an action against the Zino Parties in the United States District Court for the Southern District of New York (Case 7:20-cv-10284-CS) (the "Action," and the United States District Court for the Southern District of New York, the "Court");

**WHEREAS**, the Zino Parties deny having engaged in any wrongdoing, violation, or unlawful activity of any kind and, in particular, deny the allegations set forth in the Action; and

**WHEREAS**, Employee and the Zino Parties have, either directly or through representatives, engaged in substantial negotiation and now wish fully and finally to settle any and all disputes among them, actual or potential, through a release of claims against Releasees and the other promises contained herein.

**WHEREAS,** Employee and the Zino Parties have executed a separate settlement agreement specifically to release the Fair Labor Standards Act ("FLSA") claims in the Action (the "FLSA Agreement"), and in connection with the FLSA Agreement, Employee and Zino Parties are executing this Agreement to release Employee's New York Labor Law claims, including, without limitation, Employee's New York Labor Law claims for the statutory time period beyond the statute of limitations of the FLSA, and for any and all other claims Employee could have brought against the Zino Parties through the Effective Date of this Agreement;

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency of which is hereby acknowledged, Employee and the Zino Parties (collectively, the "Parties" and each, a "Party") enter into this New York Labor Law Settlement Agreement ("Agreement"), and agree as follows:

1. <u>Recitals</u>. The Parties acknowledge and agree that the Recitals set forth above are true and accurate and are incorporated herein by this reference.

1

2.      <u>Separation</u>.  Consistent with the foregoing Recitals, Employee's last day of employment with Employer was the Separation Date.  Employee acknowledges that, since the Separation Date, he had and, by further operation of this Agreement, shall have, no further job duties or responsibilities as an employee of, or otherwise on behalf of, Employer or the Zino Parties.  Employee further understands and agrees that, since the Separation Date, he has not been and, by further operation of this Agreement, shall not be, authorized to incur any expenses, liabilities, or obligations on behalf of Employer or the Zino Parties or, under any circumstance, act as, or represent he has the authority to act as, an agent for Employer or the Zino Parties.

3.      <u>Payment</u>.

(a)     Employee hereby agrees that, in consideration of the promises and obligations of Employee set forth in this Agreement, including, but not limited to, the with-prejudice dismissal of the Action and the full and final release of wage and hour claims against the Releasees as set forth in Paragraph 4 below, Employee will accept, on his behalf and on behalf of Releasor, the total gross amount of Forty Thousand Dollars ($40,000.00) (the "Payment"), to be allocated as follows:

(i)      Employer shall pay to Employee the total gross amount of Thirteen Thousand Three Hundred Thirty-Three Dollars and Thirty-Four Cents ($13,333.34), less any and all applicable taxes and withholdings, to be reported on an IRS Form W-2.  This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "Mauro Hernandez" within twenty (20) days after the Effective Date of this Agreement.

(ii)     Employer shall pay to Employee the total net amount of Thirteen Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($13,333.33), to be reported on an IRS Form 1099 MISC, representing payment for liquidated damages.  This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "Mauro Hernandez" within twenty (20) days after the Effective Date of this Agreement.

(ii)     Employer shall pay to counsel for Employee the total net amount of Thirteen Thousand Three Hundred Thirty-Three Dollars and Thirty-Three Cents ($13,333.33), as for Plaintiff's legal fees and reimbursed expenses incurred to be reported on an IRS Form 1099 MISC.  This sum shall be remitted by Employer to counsel for Employee in the form of a check made payable to "El-Hag & Associates, PC" within twenty (20) days after the Effective Date of this Agreement.

(b)     In the event that any taxes are deemed due and owing with respect to any portion of the Payment reported by way of an IRS Form 1099, (i) Employee shall be solely responsible for the full payment of all such taxes, as well as any interest, penalties, and costs imposed in connection with such determination or imposed as a result of the failure to withhold any sums from the Payment, and (ii) Employee shall indemnify and hold harmless Releasees in connection with the payment or nonpayment of any taxes relating to the Payment including, but not limited to, the failure to withhold any sums from the

Payment.

(c)   Employee acknowledges that the Payment encompasses and satisfies in full any and all outstanding compensation of any kind which may be due to Employee, including, without limitation, hourly wages, overtime wages, spread of hours payments, commissions, bonuses, equity-related compensation, compensation for accrued or earned paid time off, compensation for accrued or earned vacation time, compensation for accrued or earned sick time, damages, and other forms or categories of compensation arising under the New York Labor Law, and/or any other state statutes, or local statutes, orders, laws, ordinances, regulations, or the like, or case law, regarding the payment of wages to employees.  As such, Employee acknowledges that the Payment constitutes payment in full in connection with, and thereby extinguishes, any of Releasor's existing or potential claims under the New York Labor Law, including, without limitation, claims asserted in the Action and claims for all unpaid wages and compensation, retaliation, liquidated damages, and attorneys' fees.  Employee further acknowledges and agrees that (i) the Payment is adequate consideration for all of the terms of this Agreement; and (ii) any monetary or other benefits other than the Payment which, prior to the execution of this Agreement, Employee may have earned or accrued or to which Employee may have been entitled, have been paid, or such payments or benefits have been released, waived, or settled by Releasor pursuant to this Agreement.

4.   <u>Mutual General Releases</u>.

(a)   In consideration of the Payment, Employee, on Employee's behalf and on behalf of Releasor, unconditionally and generally releases the Zino Parties, as well as, in their respective capacities as such,  each of the Zino Parties' current and former owners, principals, founders, officers, directors, partners, executives, investors, advisors, parents, affiliates, subsidiaries, related entities, interested parties, consultants, agents, and employees (each, as applicable), and the heirs, executors, administrators, successors, and assigns of all of the foregoing, including, without limitation, Zino Nurseries and Landscaping, Inc. and Robert Covino (collectively, "Releasees"), from or in connection with, and Employee hereby waives and/or settles, with prejudice, any and all causes of action, suits, controversies, charges, liability, claims, or demands, known or unknown and of any nature whatsoever and which Employee ever had, now has, or shall or may have against Releasees as of the date of Employee's execution of this Agreement, including, without limitation, those arising directly or indirectly pursuant to or out of any aspect of Employee's employment with the Zino Parties.  This includes, without limitation, any and all allegations or claims set forth in, or in any way relating to, the Action.

(b)   Specifically, without limitation of the foregoing, Employee's release and waiver of claims under this Agreement shall include and apply to any rights and/or claims (i) arising under any contract or employment arrangement, express or implied, written or oral; (ii) for wrongful dismissal or termination of employment; (iii) arising under any applicable federal, state, local, or other statutes, laws, ordinances, regulations, or the like, or case law, that relate to employment or employment practices and/or, specifically, that prohibit harassment, retaliation or discrimination based upon age, race, religion, gender, sexual orientation, national origin, disability, or any other unlawful bases, including

without limitation, the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, as amended, the Civil Rights Acts of 1866 and 1871, as amended, the Americans with Disabilities Act of 1990, as amended, the Family Medical Leave Act of 1993, as amended, the Consolidated Omnibus Budget Reconciliation Act, as amended, the Employee Retirement Income Security Act of 1974, as amended, the Worker Adjustment and Relocation Notice Act, as amended, the Vietnam Era Veterans' Readjustment Assistance Act, as amended, the New York Executive Law, the New York Labor Law, the New York State Human Rights Law, the New York City Human Rights Law, the New York Wage Parity Law, and any other statutes, orders, laws, ordinances, or regulations applicable to Employee's employment, of any state or city in which any Releasees are subject to jurisdiction, and/or any political subdivision thereof, (iv) based upon any other federal, state, or local statutes, orders, laws, ordinances, regulations, or the like, or case law; (v) for tortious or harassing conduct, infliction of emotional distress, interference with contract, fraud, libel, or slander; and (vi) for damages, including, without limitation, punitive or compensatory damages, or for attorneys' fees, expenses, costs, wages, or injunctive, or equitable relief.

(c)     The Zino Parties and Releasees unconditionally and generally release Employee from any and all charges, complaints, actions, claims, causes of action, debts, demands, sums of money, controversies, agreements, allegations, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, anticipated or unanticipated, arising from conduct occurring on or before the Effective Date of this Agreement, including, without limitation, any claims incidental to or arising out of this Action or Employee's employment, contractual or other relationship with Employee or the separation thereof.

(d) Employee expressly understands and acknowledges that it is possible that unknown losses or claims exist or that their claims set forth in the Action may have been underestimated in amount or severity, and Employee explicitly took that into account in determining the amount of consideration to be paid for the giving of this Agreement, and a portion of said consideration and the mutual covenants were given in exchange for a full satisfaction and discharge of such wage and hour claims.

5.     Covenant Not to Sue.

(a)     Employee represents and warrants that, other than the Action, which is rendered null, void, and dismissed with prejudice upon Court approval of this Agreement, Employee has not filed or commenced, and is not otherwise a party to, any complaints, claims, actions, or proceedings of any kind against any of the Releasees with any federal, state, or local court or any administrative, regulatory, or arbitration agency or body that are in any way related to any of the claims released in Paragraph 4 hereof. Employee acknowledges that, in the event such complaints, claims, actions, or proceedings have been filed, this Agreement shall render them null, void, and dismissed with prejudice, and Employee hereby expressly waives his right to pursue them in any manner. To the fullest extent permitted by law, Employee agrees not to commence, maintain, or prosecute any action or proceeding in any court, agency, or other forum against the Releasees with respect

to any claims released in Paragraph 4 hereof up to and including the date on which Employee shall have executed this Agreement.

(b) Notwithstanding the foregoing provisions of this Paragraph 5, this Agreement shall not, and is not intended to, operate to preclude Employee from filing any claims before government agencies, which claims may not, under applicable law, be waived or released by way of this Agreement. However, in the event that any government agency seeks to obtain any relief on behalf of Employee with regard to any claim released and waived herein, Employee covenants not to accept, recover, or receive any monetary relief or award that may arise out of or in connection with any such proceeding.

(c) No later than seven (7) days after the Effective Date of this Agreement, Employee will provide counsel for the Zino Parties with a duly-executed stipulation of dismissal of Employee's New York Labor Law claims asserted in the Action, which may only be filed after the Payment obligations described in Paragraph 3 of the Agreement have been satisfied.

6. <u>Return of Zino Parties' Property</u>. Employee represents and warrants that he is not in possession of any property or equipment of any kind owned by or otherwise belonging to the Zino Parties, including, but not limited to, keys, mobile communication devices, merchandise, computer equipment, files, and documents (collectively, "Employer Property"). In the event that Employee discovers that he is, in fact, in possession of any such Employer Property, Employee shall return any and all such Employer Property to the Zino Parties (as prescribed in Paragraph 11 hereof) within two (2) days after such discovery.

7. <u>Confidential Information</u>.

(a) Employee hereby acknowledges that, during Employee's employment with Employer, Employee may have acquired proprietary, private, and/or otherwise confidential information ("Confidential Information," as defined and described in this sub-paragraph). Confidential Information shall mean all non-public information, whether or not created or maintained in written or electronic form, which constitutes, relates to, or refers to Releasees, any current or former employee of Releasees, any customer of Releasees, and any aspect of the operation of the business of Releasees, including without limitation, all financial and operational information. All of the foregoing are illustrative, and Confidential Information shall not be limited to those illustrations. Employee agrees not to disclose Confidential Information in any form to any third party, and Employee shall give immediate notice to the Zino Parties (as directed in Paragraph 11 of this Agreement) if compelled by law to reveal any Confidential Information to any third party. Employee acknowledges and agrees that any unauthorized disclosure to any person or persons of Confidential Information shall cause irreparable damage to Releasees and that, therefore, Releasees shall, in addition to any other available remedy, be entitled to an injunction prohibiting Employee from any further disclosure or attempted disclosure.

(b) Employee hereby represents and agrees that, upon execution of this Agreement, Employee has returned to the Zino Parties any and all Confidential

5

Information, whether electronic, physical, or otherwise, that Employee obtained by virtue of his employment with Employer, and Employee has not retained any copies of, and is otherwise not in possession of, any documents, records, or materials of any kind, whether written or electronically created or stored, which contain, relate to, or refer to any Confidential Information.

8. <u>Cooperation by Employee</u>.

Employee agrees that Employee shall cooperate with, and shall be available to, Releasees to assist in any matter, including, without limitation, government agency investigations and actual or potential court litigation or arbitration, in connection with which Employee may have knowledge. If Employee receives a subpoena or process from any person or entity (including, but not limited to, any governmental agency) which would or may require Employee to disclose documents or information or provide testimony (in a deposition, court proceeding, or otherwise) regarding, in whole or in part, any Releasees or any Confidential Information, Employee shall: (i) notify the Zino Parties of the subpoena or other process within two (2) business days of receiving it (or a shorter period such that not less than one (1) business day shall remain between such notification and any deadline for response thereto); and (ii) to the maximum extent permissible under applicable law, not make any disclosure until the appropriate Releasees have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure, limit the scope or nature of such disclosure, and/or seek to participate in the proceeding or matter in which the disclosure is sought. Employee shall further cooperate with Releasees in responding to any such subpoena or process.

9. <u>Non-Admission</u>.

(a) Employee acknowledges and agrees that Employee is not a "prevailing party" as that term may be construed, defined, or applied under any federal, state, local, or other statute, order, law, ordinance, regulation, or the like, or under case law. Employee shall not suggest or represent to any person or entity, directly or otherwise, that he is, in any manner, a "prevailing party" in connection with any claims or allegations referenced in the Action.

(b) Neither this Agreement, nor the Payment made hereunder, are intended to be, shall be construed as, or are an admission or concession by any of the Releasees of any wrongdoing or illegal or actionable acts or omissions, and each of the Releasees expressly deny that any of them engaged in any wrongdoing or illegal or actionable acts or omissions.

10. <u>Remedies</u>. The covenants, representations, and acknowledgments made by Releasor in this Agreement shall survive the execution of the Agreement and the delivery of the Payment. In the event that Paragraph 4 of this Agreement is determined to be void or unenforceable, in whole or in part, Releasees shall be excused and released from any obligation to provide any part of the Payment, and Releasor shall be obligated to return to Employer any part of the Payment that has been paid, less the amount of the taxes and other withholdings by which the portion of the Payment described in Paragraph 3(a)(i) hereof was reduced. In the event that one of the Parties commits a material breach of this

Agreement, as adjudged by a court of competent jurisdiction, the breaching Party shall, subject to applicable law, be responsible for paying to the non-breaching Party or Parties reasonable costs and expenses incurred in successfully enforcing the terms of this Agreement, as adjudged by a court, including reasonable attorneys' fees. In any of said events, each Party further reserves the right to seek any and all remedies available under federal, state, local, or other law, and shall be entitled to obtain injunctive relief to prevent any further breach of the terms set forth herein. If the Zino Parties fail to pay the Payment in accordance with this Agreement in the time frame set forth in this Agreement, as determined by a court of competent jurisdiction, then this Agreement shall become null and void.

      11.    <u>Notices</u>. Any notices or transmissions to be given hereunder by either Party to the other may be effected by (a) personal delivery in writing; (b) nationally-recognized overnight delivery service; or (c) electronic mail. Notices shall be addressed to the Parties at the following addresses:

    (a)    <u>If to Zino Parties, to</u>:

Robert Covino
Zino Nurseries and Landscaping, Inc.
45 Hardscrabble Road
North Salem, NY 10560
covinofarms@gmail.com

*with a copy to:*

Christopher Katsimagles, Esq.
Manatt, Phelps & Phillips, LLP
7 Times Square Tower
24th Floor
New York, New York 10036
ckatsimagles@manatt.com

    (b)    <u>If to Employee, to</u>:

Mauro Hernandez
C/O Jordan El-Hag, Esq.
El-Hag & Associates, P.C
777 Westchester Ave., Suite 101
White Plains, N.Y 10604
Jordan@Elhaglaw.com

Any Party hereto may, at any time, change its above-noted contact information by remitting to the other Parties hereto, seven (7) days' written notice of such new address to be used for the purpose of this Agreement.

12. <u>Entire Agreement, Amendment, and Choice of Law</u>. This Agreement constitutes the sole and complete understanding and agreement between the Parties concerning the subject matter hereof. Except to the extent explicitly set forth herein, this Agreement supersedes any previous agreements and/or understandings, whether formal or informal, and whether written or oral, between the Parties or between Employee and the Zino Parties regarding the subject matter hereof. This Agreement may not be amended except in a writing signed by both Parties. This Agreement shall in all respects be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws provisions.

13. <u>Consent to Jurisdiction</u>. Any legal suit, action or proceeding arising out of or based upon this Agreement may be instituted in the federal courts of the U.S. or the courts of the State of New York, in each case located within the State of New York, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Service of process, summons, notice or other document by mail to such Party's address set forth in Paragraph 11 herein shall be effective service of process for any suit, action, or other proceeding brought in any such court. The Parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action, or any proceeding in such courts and irrevocably waive and agree not to plead or claim in any such court that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum.

14. <u>Waiver of Jury Trial</u>. Each Party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such Party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement. Each Party to this Agreement certifies and acknowledges that (i) no representative of any other Party has represented, expressly or otherwise, that such other Party would not seek to enforce the foregoing waiver in the event of a legal action; (ii) such Party has considered the implications of this waiver; (iii) such Party makes this waiver voluntarily; and (iv) such Party has been induced to enter into this Agreement by, among other things, the mutual consideration described herein.

15. <u>Successors</u>. For the avoidance of doubt, and without limiting any other provision of this Agreement, the rights, remedies, and protections afforded to the Releasees hereunder, including the rights, remedies, and protections set forth in Paragraph 4 herein, shall inure to the benefit of the Releasees' current and former parents, subsidiaries, representatives, successors, and administrators, and assigns, as applicable.

16. <u>Severability</u>. If any provision of this Agreement is declared or determined by any court to be illegal or invalid, that part shall be modified or excluded from this Agreement only to the extent required by law, but the validity of the remaining parts, terms, or provisions shall not be affected and shall continue in full force and effect.

17. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. The several executed counterparts shall be considered an original and shall be binding on the Parties. Consistent with the provisions of Paragraph 11 hereof, the

Parties agree that email executed copies of this Agreement, whether executed and transmitted via DocuSign, PDF, or otherwise, shall be deemed effective and enforceable as originals.

18. <u>Employee's Acknowledgments</u>.

(a) Employee has carefully read and understands all of the terms of this Agreement, and agrees and acknowledges that such terms are fair and reasonable, and are not the result of any fraud, duress, coercion, pressure, or undue influence exercised by or on behalf of the Zino Parties or anyone acting on behalf of or in concert with the Zino Parties. In particular, Employee understands the seriousness of, and consequences attendant to, breaching any term or provision of this Agreement. Employee has agreed to, and has entered into, this Agreement and all of the terms hereof, knowingly, freely, and voluntarily. In executing this Agreement, Employee is not relying on, and has not relied on, any representation or statement made by the Zino Parties or anyone acting on behalf of or in concert with the Zino Parties with regard to the subject matter, basis, or effect of the Agreement, other than as explicitly set forth herein.

(b) Employee acknowledges and agrees that he was represented fairly and adequately by legal counsel of his choosing in connection with this matter and in entering into this Agreement. In particular, Employee has consulted with, and has been advised and represented by, El-Hag & Associates, PC in connection with, and prior to executing, this Agreement. Consistent with the foregoing, Employee agrees and acknowledges that this Agreement and its terms are enforceable in their entirety.

(c) Employee shall have seven (7) days from the date on which he shall have been presented with a copy of this Agreement to consider whether to sign this Agreement. Employee may unilaterally waive this seven (7) day period at his election. Employee's signature on this Agreement constitutes an express waiver of the seven (7) day period if affixed prior to the expiration of that period. The Parties agree that any revisions or modifications to the Agreement, whether material or immaterial, will not restart this time period. Employee further acknowledges that the foregoing period of time is a reasonable period of time within which to consider their rights and obligations under this Agreement.

19. <u>Effective Date</u>. The Agreement shall become effective on the later of the date on which the FLSA Agreement shall have been approved by the Court and the first day on which all signatories hereto shall have duly executed this Agreement (such date, the "Effective Date").

**IN WITNESS WHEREOF**, the Parties hereto have executed this Settlement Agreement, Release, and Waiver.

**I, Mauro Hernandez, have had this agreement translated to me in my native language of Spanish. I understand what the document says and I am satisfied with having the document orally translated to me instead of incurring the cost of having the agreement translated in writing in its entirety.**

9

having the document orally translated to me instead of incurring the cost of having the agreement translated in writing in its entirety.

Yo, Mauro Hernández, he tenido este acuerdo traducido a mí en mi lengua materna del español. Entiendo lo que dice el documento y estoy satisfecho de que el documento se traduzca oralmente a mí en lugar de incurrir en el costo de que el acuerdo se traduzca por escrito en su totalidad.

**MAURO HERNANDEZ**

_____    Date: 4/26/2021

**ZINO NURSERIES AND LANDSCAPING, INC.**

By: Robert Covino    Date: 4/28/21
Name: Robert Covino
Title: Owner/President

**ROBERT COVINO**

_____    Date: 4/28/21

9